### JOHNSON v. JOHNSON.

(District Court, D. Nevada. January 18, 1915.)

No. A–17.

1. COURTS ⬥263—UNITED STATES COURTS—JURISDICTION OF ENTIRE CONTROVERSY—"JURISDICTION."

   After jurisdiction on the ground of diverse citizenship attached to a wife's suit for an accounting and for a division of community property, the court was bound to consider all issues properly presented, and thereafter render a judgment and decree, and its duty to enforce its decrees is as binding as its duty to render them; "jurisdiction" being the power to hear and determine the subject-matter in controversy in the suit before the court, including the power to issue proper process to enforce such judgment or decree.

   [Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. ⬥263.

   For other definitions, see Words and Phrases, First and Second Series, Jurisdiction.]

2. COURTS ⬥263—UNITED STATES COURTS—ANCILLARY AND INCIDENTAL JURISDICTION—RECEIVERSHIP.

   In a suit within the jurisdiction of the District Court, on the ground of diverse citizenship, to secure a division of community property and an accounting against a husband, where it was determined that the community property must be divided, and where a master found that the wife was entitled to an additional money judgment sufficient to exhaust the husband's estate, creditors of the husband, deceased insolvent, some of whose claims were superior to any judgment that might be rendered

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

in favor of plaintiff, might intervene and present their claims; whereupon the court,, without surrendering any of the property to the administrator of the deceased husband appointed by the state court, was required to ascertain how much of the fund might equitably be applied to plaintiff's judgment, and administer complete justice in the controversy.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 799, 800; Dec. Dig. ⚖══263.]

3. COURTS ⚖══489 — UNITED STATES COURTS — DIVERSE CITIZENSHIP — STATE STATUTES.

The judicial power, authority, and duty of the United States District Court is wholly independent of state action and cannot directly or indirectly be destroyed, abridged, limited, or rendered less éfficacious by any state statute or by any state authority whatever, so that Rev. Laws Nev. §§ 5972, 5974, 5975, could not confer on the District Courts of the state a practically exclusive jurisdiction over the property of a deceased party defendant in possession of the United States District Court by its receiver and in course of distribution to judgment and other creditors.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 404, 1324–1330, 1333–1341, 1372–1374; Dec. Dig. ⚖══489.]

4. COURTS ⚖══505—UNITED STATES COURTS—JURISDICTION—PROPERTY IN CUSTODY OF STATE COURTS.

The United States District Court would not attempt to execute its judgment in favor of plaintiff, if the property of defendant's estate was in the possession and custody of an administrator appointed by the state court, since the federal court, upon reasons of necessity and comity, cannot seize and control property while it is in the custody of a state court.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 1410; Dec. Dig. ⚖══505.]

5. COURTS ⚖══489—UNITED STATES COURTS—DIVERSE CITIZENSHIP—ADMINISTRATION OF ESTATES.

The powers exercised by the English Court of Chancery in probate matters, on the theory that the administrator of an estate was charged with the administration of a trust, prevailing at the adoption of the federal Constitution and the passage of the Judiciary Act, were vested in the United States Circuit Court, so that such court has general equity jurisdiction to administer, as between citizens of different states, the assets of a deceased party to a suit within its jurisdiction.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 404, 1324–1330, 1333–1341, 1372–1374; Dec. Dig. ⚖══489.]

In Equity. Action by Roxa S. Johnson against William S. Johnson, with motions by Tonopah Banking Corporation and J. T. Garner, administrator with the will annexed of the estate of William S. Johnson, deceased, for orders permitting them to file complaints in intervention and a motion by the administrator for an order making all creditors of the decedent parties defendant. Motions to intervene allowed.

W. W. Griffin and Sweeney & Morehouse, all of Carson City, Nev., for plaintiff.

George A. Bartlett, of Carson City, Nev., for receiver.

C. L. Richards and Ayers & Gardiner, both of Tonopah, Nev., for administrator.

George B. Thatcher, of Carson City, Nev., and William Forman, of Tonopah, Nev., for George W. Summerfield and Ada Smith.

Mack & Green, of Reno, Nev., for Tonopah Banking Corporation.

⚖══For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

FARRINGTON, District Judge. It was decided April 6, 1914, that the community property acquired during the marriage of Roxa S. Johnson and William S. Johnson must be divided between them. A master was appointed, who thereafter reported the character and value of the property. When this report came in, Mrs. Johnson was awarded an accounting, and the matter was again referred to the master, who filed a second report, in which he found that Mrs. Johnson is entitled to a judgment for $20,173.72, in addition to the share of the community property mentioned in the decree.

On the 16th day of November, the Tonopah Banking Corporation filed herein a notice that it would move for an order permitting it to file a complaint in intervention, based on the ground that it is a creditor of W. S. Johnson, now deceased; that the assets of the estate are in the possession and control of a receiver appointed by this court; that said corporation is materially interested in the distribution of the assets by reason of a judgment for the sum of $4,647.39 rendered in its favor and against said W. S. Johnson, December 24, 1913, in the district court of the state of Nevada for Washoe county.

On the same day, November 16, 1914, J. T. Garner, as administrator with the will annexed of the estate of William S. Johnson, deceased, filed in this court a notice of motion similar to that filed by the Tonopah Banking Corporation, in which it is stated:

That the administrator will ask for an order making all creditors of W. S. Johnson, deceased, who have filed their claims in the state court, parties defendant to this action, and requiring and permitting them to appear herein and assert their respective claims, "or that the court order that a sufficient amount of the property of decedent be delivered to defendant to cover all of the claims aforesaid, together with defendant's commissions, costs, and expenses of administration and counsel fees; or that this court do order delivered to affiant all of the decedent's half of the common property, that any judgment obtained by plaintiff be made payable in due course of administration of the estate of decedent, as a general claim against said estate, and that plaintiff file her judgment in the matter of the estate of said deceased, and that her rights under said judgment be there determined; or that the court order all creditors of said decedent to file their claims herein, and that this court do act as a court of probate in determining the amount, priority, and payment of all claims against said decedent, including the claim of plaintiff; that if the court order said creditors to be made parties to this action then that the court, in such order, reserve to defendant the right to be heard upon the trial or hearing of said claims and to present evidence upon the question of the costs and expenses of administration, commissions, and counsel fees, and that the court fix and give judgment to defendant for the amount thereof and the priority thereof, and that the court make such other and further order as is meet in the premises."

Among the creditors named in the administrator's notice is Ada Smith, who claims a judgment for money loaned to the amount of $5,340.22. On the hearing of the motions, Ada Smith appeared by her attorney, and urged that the district court for Nye county has exclusive jurisdiction of all proceedings in settlement of the estate.

[1] Jurisdiction in this case is based on diverse citizenship. At the time suit was brought, Mrs. Johnson was a citizen and resident of California, and the late W. S. Johnson was a citizen and resident of Nevada. When jurisdiction once attaches, this court is bound to consider all issues properly presented, and thereafter render judgment and de-

cree. Its duty to enforce its decrees is no less obligatory than its duty to render them. This principle is supported by abundant authority.

"Jurisdiction is defined to be the power to hear and determine the subject-matter in controversy in the suit before the court, and the rule is universal that, if the power is conferred to render the judgment or enter the decree, it also includes the power to issue proper process to enforce such judgment or decree. * * *

"The jurisdiction of a court is not exhausted by the rendition of the judgment, but continues until that judgment shall be satisfied. Consequently, a writ of error will lie when a party is aggrieved in the foundation, proceedings, judgment, or execution of a suit in a court of record.

"Process subsequent to judgment is as essential to jurisdiction as process antecedent to judgment, else the judicial power would be incomplete and entirely inadequate to the purposes for which it was conferred by the Constitution." Riggs v. Johnson County, 6 Wall. 166, 187, 18 L. Ed. 768; Leadville Coal Co. v. McCreery, 141 U. S. 475, 477, 12 Sup. Ct. 28, 35 L. Ed. 824; Phelps v. Mutual Reserve Fund Life Ass'n, 112 Fed. 453, 50 C. C. A. 339, 61 L. R. A. 717; Brun v. Mann, 151 Fed. 145, 80 C. C. A. 513, 12 L. R. A. (N. S.) 154, 159.

[2-4] Mrs. Johnson bringing her suit in this court may have wished to avoid local prejudice. If she can be turned away with half relief, and remitted for the remainder to the very court which she wished to avoid, her constitutional right to invoke the jurisdiction of the federal court is of little worth.

A receiver was appointed, who took possession of the property in order that it might be preserved, and thus be available to satisfy the final decree. If this court contents itself with a decision that Mrs. Johnson is entitled to judgment for a definite sum of money in addition to one-half the community property, and then orders its receiver to surrender the property in its hands to the administrator to be distributed under direction of the state court, and directs Mrs. Johnson to apply to that tribunal to collect her judgment, how can such a course be justified? Can it be said that federal courts are unable to do equity in such cases, or that jurisdiction based on diverse citizenship when once acquired by a federal court is liable at any time by death of either party to be transferred to the probate court?

These questions answer themselves. The power and authority of this court rests on no such evanescent foundation.

I am aware that an attempt has been made to confer on the district courts of this state a jurisdiction, practically exclusive, over the property of deceased persons. Under sections 5972, 5974, and 5975 of the Revised Laws of this state, if controlling here, it would seem that no judgment can be rendered in favor of Mrs. Johnson until she has filed her claim with the clerk of the district court of Nye county; and, if such a judgment be rendered and entered in this court in her favor, it can be no more than this, "that the administrator pay in due course of administration the amount ascertained to be due."

The judicial power, authority, and duty of this court is wholly independent of state action. It cannot, directly or indirectly, be destroyed, abridged, limited, or rendered less efficacious by any state statute, or by any exertion of state authority whatever. In this connection the language of Mr. Justice Miller in Hess v. Reynolds, 113 U. S. 73, 77, 5 Sup. Ct. 377, 378 (28 L. Ed. 927), is pertinent:

"This jurisdiction of the courts of the United States, in controversies between citizens of different states, cannot be ousted or annulled by statutes of the states, assuming to confer it exclusively on their own courts.

"It may be convenient that all debts to be paid out of the assets of a deceased man's estate shall be established in the court to which the law of the domicil has confided the general administration of these assets. And the courts of the United States will pay respect to this principle, in the execution of the process enforcing their judgments out of these assets, so far as the demands of justice require. But neither the principle of convenience, nor the statutes of a state, can deprive them of jurisdiction to hear and determine a controversy between citizens of different states, when such a controversy is distinctly presented, because the judgment may affect the administration or distribution in another forum of the assets of the decedent's estate. The controverted question of debt or no debt is one which, if the representative of the decedent is a citizen of a state different from that of the other party, the party properly situated has a right, given by the Constitution of the United States, to have tried originally, or by removal in a court of the United States, which cannot be defeated by state statutes enacted for the more convenient settlement of estates of decedents."

A clear statement of the views of the Supreme Court of the United States on this subject is also found in Rio Grande R. Co. v. Gomila, 132 U. S 478, 10 Sup. Ct. 155, 33 L. Ed. 400. The Rio Grande Railroad Company had obtained a money judgment in the United States Circuit Court for the Eastern District of Louisiana. After certain real and personal property had been taken on execution and advertised for sale, Gomila died; his representatives having been made parties, a new sale was ordered. but before the sale could take place, on motion of the administrator appointed by the state court, the marshal was ordered to desist, and surrender the property levied on to the administrator. The case was then taken to the Supreme Court of the United States on writ of error, where the decision of the federal court was reversed. It was held that only so much of the property, or of its proceeds, as might remain after satisfaction of the judgment under which the property had been seized, could be transferred to the administrator. The court said:

"The jurisdiction of a court of the United States once obtained over property by being brought within its custody continues until the purpose of the seizure is accomplished, and cannot be impaired or affected by any legislation of the state, or by any proceedings subsequently commenced in a state court. This exemption of the authority of the courts of the United States from interference by legislative or judicial action of the states is essential to their independence and efficiency. If their jurisdiction could in any particular be invaded and impaired by such state action, it would be difficult to perceive any limit to which the invasion and impairment might not be extended. To sanction the doctrine for which the executor, appointed by the probate court of the parish of Orleans, contends would be to subordinate the authority of the federal courts in essential attributes to the regulation of the state, a position which is wholly inadmissible. * * *

"When property is seized to satisfy a money judgment of the United States court, and thus brought within its custody it is appropriated to pay that judgment, and the court cannot surrender its jurisdiction over the property until it is applied to that judgment, or that judgment is otherwise satisfied. Only the part remaining after such appropriation goes, upon the death of the debtor, into the probate court as his assets. All proceedings under a levy of execution have relation back to the time of the seizure of the property. * * *

"We do not question the general doctrine laid down in Yonley v. Lavender, 21 Wall. 276, 279, 280 [22 L. Ed. 536], to the effect that the administration

225 F.—27

laws of a state are not merely rules of practice for the courts, but laws limiting the rights of the parties, and will be observed by the federal courts in the enforcement of individual rights, and that those laws upon the death of a party withdraw the estate of the deceased from the operation of the execution laws of the state, and place them in the hands of his executor or administrator for the benefit of his creditors and distributees. But that doctrine only applies where the property has not been, previous to the death of the debtor, taken into custody by the federal court upon its process, and thus specifically appropriated to the satisfaction of such judgment. In this case, had Gomila died before the property in question had been seized upon process issued upon a judgment against him, the doctrine of the case cited might have been applicable."

To the same effect, see Hale v. Tyler (C. C.) 115 Fed. 833; Heaton v. Thatcher (C. C.) 59 Fed. 731.

It may be conceded that this court would not attempt to execute its judgment in favor of Mrs. Johnson if the property of the estate of W. S. Johnson were in the possession and custody of the administrator. This is so because the federal court cannot seize and control property while it is in the custody of a state court. Such a course is forbidden both by necessity and comity. Waterman v. Canal-Lousiana Bank Co., 215 U. S. 33, 44, 30 Sup. Ct. 10, 54 L. Ed. 80; Compton v. Jesup, 68 Fed. 263, 279, 15 C. C. A. 397.

It will be observed that, in the last quotation from the Gomila Case, it is said that the doctrine which withdraws the estate of a decedent from the execution laws of a state, and places it in the hands of an administrator, does not apply when, previous to the death of the debtor, his property has been taken into the custody of the federal court, and thus specifically appropriated.

The property involved in the present case now is, and for a period beginning long prior to the death of said decedent has been, in the custody and possession of this court. There is therefore no question of interference with the possession of the state court. That court neither had nor has any possession.

If the doctrine of the Gomila Case is sound, Mrs. Johnson is entitled to require this court to apply the property in the hands of the receiver in satisfaction of her judgment, if she obtains one, and the residue should then be remitted to the state court for administration. Such a course would be entirely free from embarrassment if the Johnson estate were solvent. This, unfortunately, is not the case. If the findings of the master are approved, and a judgment for $20,173.72 is entered in her favor, this, together with costs and expenses of the receivership, will, in all probability, be sufficient to exhaust the estate. Nothing will be left for other creditors, some of whom are alleged to hold claims superior to any judgment which can be rendered in favor of Mrs. Johnson.

Such a condition is not sufficient to deprive this court of its jurisdiction, or to relieve it of the duty to apply the property now in its custody to the satisfaction of whatever judgment Mrs. Johnson may obtain. But it does impress upon the court a duty to ascertain how much of the fund can legally and equitably be so applied. In order to ascertain that fact, it is necessary to listen to those who desire to intervene and exhibit their claims.

A proposal to surrender the whole or any definite portion of the property at this time to the administrator contravenes the whole theory of equity jurisdiction in relation to receivers and receivership funds.

"The principle that the court, which has actual possession of the fund, has the exclusive right to determine all claims and liens asserted against it, is fundamental. Hence every court of equity in such a case assumes to decide all controversies touching the subject-matter of the suit and the fund; to determine the existence and priority of all liens; and, finally, to distribute the surplus among those who are entitled to it." Kennedy v. I. C. & L. R. Co. (C. C.) 3 Fed. 97, 102; Thompson v. Scott, 23 Fed. Cas. No. 13,975.

In this view of the situation, the movants are seeking to intervene. In my opinion, it is the duty of this court, having once acquired jurisdiction, to retain it in order to do complete justice in the premises.

[5] As to the power of the court to take this action there can be no doubt. Until probate administration was regulated by statute and assigned to specified courts, it was a well-recognized branch of chancery jurisdiction. At the time of the adoption of the federal Constitution and the passage of the Judiciary Act, the Court of Chancery in England was the ordinary tribunal for such matters, and it was with the powers then exercised by that court that the United States Circuit Court was invested. When a representative or administrator of an estate was appointed, he was regarded as charged with the administration of a trust. The Ecclesiastical Courts had no power to deal with trusts, or to settle accounts, or to marshal and distribute assets; these things the Courts of Chancery then had ample power to do, and for that reason resort was had to them. 1 Story, Eq. Jurisp., § 532; Ball v. Tompkins (C. C.) 41 Fed. 486, 489; Payne v. Hook, 7 Wall. 430, 19 L. Ed. 260; State of Pennsylvania v. Wheeling & Belmont Bridge Co., 13 How. 518, 14 L. Ed. 249.

In Lawrence v. Nelson, 143 U. S. 215, 12 Sup. Ct. 440, 36 L. Ed. 130, it is said that the general equity jurisdiction of the Circuit Court of the United States to administer, as between citizens of different states, the assets of a deceased person within its jurisdiction, cannot be defeated or impaired by laws of a state undertaking to give exclusive jurisdiction to its own courts.

In Clarke v. Perry, 5 Cal. 60, 63 Am. Dec. 82, it was held with reference to the equity jurisdiction of the courts of California that:

"The probate court is a court of special and limited jurisdiction. Most of its general powers belong peculiarly and originally to the court of chancery, which still retains all of its jurisdictions. Where therefore a bill is filed in chancery against an administrator, to compel him to account, by one who has not been an actual party to a proceeding or settlement in the probate court, he may totally disregard such proceeding or settlement; and, although the settlement in the probate court is a final settlement, the complainant, who was no party to it, may treat it as a nullity, and proceed to invoke the equitable powers of the district court, and compel the administrator to a full account."

In 3 Pomeroy's Eq. Jurisp. (3d Ed.) p. 2294, in the note, it is said:

"The full original jurisdiction of the English Court of Chancery over administrations and matters pertaining to the settlement of estates is possessed by the United States Circuit Courts. Whenever these courts obtain jurisdiction of such a matter on account of the state citizenship of the parties, they will exercise the full powers and grant the full reliefs of chancery, unlimited

and unaffected by any restrictive legislation of the state in which the matter arose, or in which the parties are resident. The state statutes abrogating the equitable jurisdiction of the state courts, and conferring an exclusive jurisdiction upon the probate courts, have no effect whatever upon the powers of the United States tribunals. This jurisdiction of the United States courts is, however, concurrent with that of the state tribunals; and if a state probate or other court has already assumed jurisdiction, and an administration is pending before it, the United States Circuit Court will not interfere in the absence of fraud or other like ground of equitable cognizance."

There is no merit in the objection that the moving parties have been guilty of laches. Therefore they, and those for whom they appear, will be permitted to intervene.

All parties interested will have 20 days from the date hereof within which to take such steps as they may be advised.