**STEWART et al. v. WALL et al.**

No. 4076.

Circuit Court of Appeals, Fourth Circuit.

Jan. 9, 1937.

William J. Moran, Jr., of Philadelphia, Pa., and Bernie Ray Stewart (Kratz, Hillegass & Moran, of Philadelphia, Pa., on the brief), for appellants.

W. P. Sandridge, of Winston-Salem, N. C. (Manly, Hendren & Womble, of Winston-Salem, N. C., on the brief), for appellees.

Before PARKER and SOPER, Circuit Judges, and GLENN, District Judge.

GLENN, District Judge.

This suit is an effort on the part of the plaintiffs to obtain the benefits from the estate of J. C. Stewart, who died on September 19, 1928. The suit is for an accounting and seeks to recover profits from the operation of a printing business and also from certain real estate which is alleged to have belonged to J. C. Stewart and his brother M. I. Stewart as partners. The suit was instituted in the District Court for the Middle District of North Carolina and was referred to Kenneth Brim, Esq., of Greensboro, as special master to take the testimony and report his findings of fact and conclusions of law. The special master spent several days taking the testimony and filed an able report. Exceptions filed by the plaintiffs to the master's report were heard at length by the District Judge, and the District Judge approved the master's report in every respect. In addition thereto, he filed a memorandum opinion setting forth an additional reason for the dismissal of the plaintiffs' suit. This appeal is from that judgment.

█ In order to understand the case at all, it is necessary to make some reference to the factual background out of which the suit grows. So far as the question of affirming or reversing the conclusions of the special master and District Judge on the controverted questions of fact is concerned, we are mindful of the well-established rule thereabout. This well-established rule is, of course, that findings of a special master, affirmed by a District Judge, will not be reversed on appeal unless they are clearly against the preponderance of the evidence, or are without any substantial evidence to support them. Here our outline of the facts involved is inserted in the opinion to render the opinion intelligible as well as to set forth reasons for affirming the decision of the special master and the District Judge.

J. C. Stewart and M. I. Stewart were brothers, and about the year 1885 began the operation of a printing establishment in Winston-Salem, N. C. To say the least, M. I. Stewart exhibited traits of eccentricity, but we must have in mind that eccentricity is not in itself an indication of a lack of mental capacity in a legal sense. As is frequently the case with eccentric people, his eccentricity did not prevent the brothers making money out of their business. The printing establishment was so well recognized that at one time the Stewart concern

were state printers for the State of North Carolina. The evidence shows that profits from the business were either turned back into the business or invested rather wisely in real estate in and around Winston-Salem. Winston-Salem has, of course, grown enormously since 1885, and the real estate purchased by the Stewarts became increasingly valuable.

In the year 1913 the building where the printing business was carried on burned. Following this fire, M. I. Stewart was indicted for arson. Whether this indictment was the motivating influence causing his removal to institutions for the care of mental incompetents, it is not necessary to decide. The degree of mental disability of M. I. Stewart during the two years succeeding the indictment is a matter about which reasonable men might differ. The special master and the District Judge have decided that he was mentally incompetent during this period and there certainly is substantial evidence to support this conclusion.

In the argument for the appellees we find an admirable résumé of the life of M. I. Stewart for the next succeeding years. We do not feel that we can improve upon this statement of the facts and adopt it as ours. It is well worded and amply supported by citations from the record.

"* * * Immediately following his indictment for arson, and at the instance of J. C. Stewart, M. I. Stewart was committed to the State Hospital at Morganton, North Carolina. This commitment was made by the Clerk of the Superior Court of Forsyth County pursuant to the provisions of Consolidated Statutes of North Carolina, contained in the chapter entitled 'Hospital for the Insane.' There was no inquisition of lunacy and no guardian either of the person or the property was appointed. By reason of this commitment to the State Hospital, M. I. Stewart was never tried upon his indictment for arson. The record does not disclose how M. I. Stewart left the State Hospital at Morganton.

"Following his indictment, he ceased to become active in the printing business in Winston-Salem, and the next we hear from him is as a patient in the Westbrook Sanatorium of Richmond, Virginia. He was a patient there on two occasions. The first time from August 2, 1913, until September 9, 1914, when he was discharged. The second occasion was from January 22, 1916, until September 7, 1916, when he was again discharged (Record, Vol. 1, pp. 91, 93). Be-

tween these intervals he resided in Michigan and made one or more trips to Winston-Salem, North Carolina.

"Following his final discharge from Westbrook Sanatorium, M. I. Stewart went to Colorado. There he conducted a printing business of his own, at least from 1916 through 1919 (Record, Vol. 1, p. 163). After leaving Colorado, Mr. M. I. Stewart returned to Winston-Salem in February, 1922 (Record, Vol. 1, p. 235), where he resided from that time until his death in 1924 (Record, Vol. 1, pp. 106, 222–223). During the period that he resided in Winston-Salem upon his return, he worked at the printing shop as a compositor and for a weekly wage, just as other employees (Record, Vol. 1, pp. 223, 236).

"Following the indictment of M. I. Stewart for arson and his commitment to Morganton, and following his discharge from the Westbrook Sanatorium in Richmond, Mr. M. I. Stewart executed a bill of sale, selling to J. C. Stewart his entire interest in the printing business. This bill of sale is dated April 8, 1915, and was recorded March 27, 1924 (Record, Vol. 1, p. 197). After M. I. Stewart left the City in 1913 the name of the printing business was changed. It had formerly been operated as 'Stewarts' Printing House.' It is not clear exactly when the name changed, but it was first changed to 'Stewart's Printing House' and later to 'Stewart Printing House.' Letterheads, billheads, checks and other advertising matter, during the time that M. I. Stewart was in Winston-Salem prior to his indictment carried the subtitle 'M. I. and J. C. Stewart, Proprietors.' After M. I. Stewart left Winston-Salem, following his indictment and after the name of the printing house was changed to 'Stewart's Printing House' and later to 'Stewart Printing House,' M. I. Stewart's name was dropped and the letterheads, billheads, checks and other advertising matter referred to 'J. C. Stewart, Proprietor.'

"Upon M. I. Stewart's return to Winston-Salem in 1922, he accepted a position with J. C. Stewart in the printing house. The evidence is clear and uncontradicted that he worked at a salary of $25 a week as a compositor. He stated upon numerous occasions that he had sold out his interest to J. C. Stewart (Record, Vol. 1, pp. 153, 228). J. C. Stewart stated upon several occasions that he had bought out M. I. Stewart's interest (Record, Vol. 1, pp. 154, 228). These statements were made in the pres-

ence of M. I. Stewart, and no contradiction to the statements was offered (Record, Vol. 1, p. 228). Prior to the time that M. I. Stewart left Winston-Salem following his indictment, he was the outside man and solicited business for the printing house, J. C. Stewart doing the work inside. Following M. I. Stewart's return to Winston-Salem in 1922, J. C. Stewart did outside business soliciting and M. I. Stewart did nothing more than act as compositor at a weekly salary. Prior to the death of M. I. Stewart he was restored to sanity by a legal proceeding in Forsyth County, and died March 4, 1924."

■ Upon the death of M. I. Stewart in 1924, his children did not seek to administer his estate, but J. C. Stewart was appointed administrator, administered the estate, and filed a final report. Under the accepted practice in North Carolina, the real estate owned jointly by J. C. Stewart and M. I. Stewart was divided. This partition was regularly carried out and proceeded upon the theory that J. C. Stewart and M. I. Stewart each owned a one-half undivided interest therein. Appraisals were had and the division, carried on under the common practice in North Carolina, was subsequently ratified and affirmed by an order of the judge of the superior court for Forsyth county. This type of partition, while not as formal as similar proceedings in other states, is nevertheless the common method in North Carolina and, when a partition thereunder is ratified and affirmed by a decree of the superior court, it has always been accepted to be of final and binding force. The decree of the court having jurisdiction has all of the finality accorded to the decree of a court which had taken jurisdiction of the real estate in an original suit for partition. The fact that the initial steps are carried out under the supervision of the clerk does not render the confirming decree of the superior court any less final or binding on the parties. The present plaintiffs took advantage of these proceedings and sold their share of this property for approximately $60,000. At the time of this partition, and before its approval by an appropriate order, no contention was made as to the right of the present plaintiffs to an accounting for any profits arising from the alleged partnership in the real estate.

Subsequently the plaintiffs sought to recover from Lindsay Stewart Wall, the beneficiary of the will of J. C. Stewart, deceased, by filing a caveat. This caveat pro-

ceeding went to the Supreme Court of North Carolina, and the will was finally affirmed. See In re Stewart's Will, 198 N.C. 577, 152 S.E. 685. Then the plaintiffs in their effort to defeat the will of J. C. Stewart instituted another suit against Leo S. Disher, administrator of the estate of J. C. Stewart. This suit ended by the plaintiffs submitting to a voluntary nonsuit. It was after all of this that the present suit was instituted on September 24, 1930, so that we are here dealing with the third attempt of the plaintiffs to recover the bulk of the estate of J. C. Stewart. The object of this suit is to compel the estate of J. C. Stewart to account to the plaintiffs, who are some of the heirs at law of M. I. Stewart, for alleged partnership profits resulting from the operation of the printing house and their alleged partnership in the real estate.

■ In addition to affirming all of the findings of fact and conclusions of law as reported by the special master, the District Judge, in a memorandum opinion, found that the suit was improperly constituted; in short, he found that the suit should be dismissed because brought by the wrong parties. Since the holding of the District Judge on this phase of the case disposes of the entire case, it is well to consider it before going into an examination of the decision of the master and the District Judge on the many controverted questions of fact. We are of the opinion that the District Judge was correct in holding that the suit was improperly constituted. The suit could have been properly brought by the personal representative of the estate of M. I. Stewart, and should have been so brought. We have carefully considered the cases cited by the plaintiffs in their argument, and none of them contravene the well-established rule in North Carolina declared both by statute and decision, that an action for an accounting for partnership property must be instituted by the personal representative of the deceased partner. Resort to common law for relief from the statutory law of North Carolina affords the present plaintiffs no comfort. Relief from the common law is only effected through the enabling statutes of North Carolina. These statutes adequately meet the situation and have been found by the courts of North Carolina over a period of years to be adequate, ample, and just in their operation. It is well settled that in matters of this kind the federal courts are bound to apply the law of the state wherein the con-

troversy arises. Where a state Legislature has made ample provision through applicable statutes for the personal representative to bring all such suits, there is no sound reason for a court to seek to avoid the dictates of the statutes in this regard. Ample provision is found in the statutory law of North Carolina for the removal of incompetent or negligent administrators. In this case there is no showing that even a request was ever made to have J. C. Stewart bring such a suit. Even if the plaintiffs felt that J. C. Stewart, by reason of his adverse interest, would not readily bring such a suit, the courts of North Carolina were always open to them to have some proper party appointed to bring such a suit in their behalf. The courts of North Carolina, administering law and equity simultaneously, are not without statutory and inherent power to appoint a proper fiduciary to bring a suit of this character. Nowhere does it appear that the plaintiffs have ever made any effort to avail themselves of this right, but, on the contrary, they accepted the benefits of the division of the real estate, which they in turn sold for a substantial sum.

■ The plaintiffs cite several cases, particularly Johnson v. Johnson (D.C.) 225 F. 413, which declare the proposition of law that a court once acquiring the jurisdiction of property will do all that is necessary to fully administer it. This is well settled, but the trouble here from the appellants' standpoint is that this court has never acquired jurisdiction of any property, because the suit has been brought by the wrong plaintiffs. The capacity of parties to bring suits is a substantial matter in the law. It would be like lifting one by his own bootstraps to hold that a party is entitled to relief on the theory that the court had acquired jurisdiction of the property involved when the suit brought to acquire jurisdiction of the property was itself improperly constituted. Here the court never acquired jurisdiction of the property, and, therefore it had no power to remedy defects or be liberal with respect to pleadings. The legal difficulty confronting the plaintiffs is that the suit was brought by parties who under the North Carolina law had no capacity to bring the same.

We do not deem it necessary to discuss the matter further, because the District Judge was plainly right in holding that the suit was improperly constituted and should have been brought by the personal representative, properly appointed, of the estate of M. I. Stewart, deceased. We affirm his findings as set forth in his memorandum opinion.

We only discuss this matter to point out that this is not a highly technical decision but involves a substantial point of law. The states of the United States have a right to declare how estates of decedents shall be administered, and no court should encourage a departure from the regular procedure which the Legislature has established by statute. Particularly is this true when the highest courts of the state have from time to time dealt with the law thereabout, and have themselves declared a well-settled rule of adherence to the statutory provisions. We have considered, in arriving at this conclusion, the cases cited below. These cases fully sustain the opinion of the District Judge as to the North Carolina law in this respect: Brown v. Wilson, 174 N.C. 636, 94 S.E. 416; Byrd v. Byrd, 117 N.C. 523, 23 S.E. 324; Tulburt v. Hollar, 102 N.C. 406, 9 S.E. 430; Avery v. Guy, 202 N.C. 152, 162 S.E. 217.

■ We have above set forth a brief review of the major facts constituting the background of this suit. The testimony, while somewhat indefinite on some features of the case by reason of the passage of time, covered a wide range. The master shows by his report that he carefully considered all of the evidence. On appeal to the District Judge his findings on the controverted questions of fact were affirmed. The District Judge also sustained the conclusions of law as reported by the special master. It is well settled that in such situation the appellate court cannot reverse such findings of fact unless they are wholly without substantial evidence to support them, or unless they are so contrary to the preponderance of evidence that they are plainly wrong. Far from finding that they are without the support of substantial evidence, we find ourselves in accord with the findings of fact as made by the special master and the District Judge. It is plainly, therefore, our duty in this situation to affirm such findings. We are also in accord with the conclusions of law as reported by the special master and affirmed by the District Judge. The following cases declare the applicable principle: Commercial Casualty Ins. Co. v. Williams (C.C.A.) 49 F.(2d) 472, 473, where the rule is stated as follows: "It has been repeatedly held by this court that the District Court's findings of fact, supported by evidence, will not be reversed, unless clearly

wrong. Chesapeake Lighterage & Towing Co., Inc., v. Baltimore Copper Smelting & Rolling Co. (C.C.A.) 40 F.(2d) 394, and cases there cited. This rule is at least equally applicable where the finding of the judge is based upon the report of a referee, for there we not only have the judgment of the referee, who took the testimony and heard the witnesses, but the judgment of the court"; Crawford v. Briant (C.C.A.) 53 F.(2d) 754; Fisher v. Shropshire, 147 U.S. 133, 13 S.Ct. 201, 37 L.Ed. 109; Warren v. Keep, 155 U.S. 265, 267, 15 S.Ct. 83, 39 L.Ed. 144; Crawford v. Neal, 144 U.S. 585, 596, 12 S.Ct. 759, 36 L.Ed. 552; Furrer v. Ferris, 145 U.S. 132, 12 S.Ct. 821, 36 L.Ed. 649; Commercial National Bank v. Stockyards Loan Co. (C.C.A.8) 16 F.(2d) 911, 912; Road Imp. Dist. No. 4 v. Wilkerson (C.C.A.8) 5 F.(2d) 416, 418; Smith v. Hovland (C.C.A.9) 11 F.(2d) 9, 13; Dickinson v. O. & W. Thum Co. (C.C.A.6) 8 F.(2d) 570, 572.

The decree of the court below is therefore affirmed.