**Helen L. SEYMOUR, Executrix, Plaintiff, Appellant,**

v.

**PARKE, DAVIS & COMPANY, Defendant, Appellee.**

**No. 7309.**

United States Court of Appeals, First Circuit.

March 27, 1970.

John M. Hyson, Boston, Mass., with whom E. Paul Kelly, Manchester, N. H., Warner & Stackpole, Boston, Mass., and Sheehan, Phinney, Bass & Green, Manchester, N. H., were on brief for appellant.

Martin L. Gross, Concord, N. H., with whom Sulloway, Hollis, Godfrey & So-

---

den, Concord, N. H., was on brief, for appellee.

Before ALDRICH, Chief Judge, McENTEE and COFFIN, Circuit Judges.

ALDRICH, Chief Judge.

In 1963 one Seymour, a resident of Massachusetts, purchased there a drug manufactured by defendant appellee Parke, Davis & Co. He ingested it in Massachusetts, and lived in Massachusetts until 1966, when he died. Plaintiff appellant, who is and was at all times resident in Massachusetts, is his executrix. In 1968 plaintiff was appointed ancillary executrix in the state of New Hampshire and sued the defendant there in the district court for the conscious suffering and death of Seymour, allegedly due to defendant's drug. Diversity of citizenship, and the requisite jurisdictional amount, appear. Service was made pursuant to the New Hampshire long arm statutes. On the stipulated facts defendant falls within the literal terms of the statutes. There is no evidentiary support for defendant's contention that the New Hampshire legislature intended its statutes to mean less than they said. Nevertheless, the court granted defendant's motion to dismiss for want of in personam jurisdiction. 294 F.Supp. 1257. It stated, at p. 1259,

" * * * I rule that under the facts of this case the lack of *any* New Hampshire interest in this litigation renders service under N.H.Rev.Stat. Ann. 300:11 and 300:12 defective for due process reasons, and compels dismissal for lack of jurisdiction of this court." (Emphasis in original.)

It is undisputed that New Hampshire has no interest in this litigation. The cause of action did not arise there, or as a result of anything which occurred there. The decedent, so far as appears, was never in New Hampshire, and owned no property there. Plaintiff, also, had no connection with New Hampshire. She acquired none of significance by being appointed ancillary executrix, admittedly solely for the purpose of bringing this suit. It is stipulated that the defendant was at all times doing business in Massachusetts, and that the time for suit, so far as Massachusetts is concerned, had expired prior to the institution of the present action. Plaintiff concedes that her only reason for suing in New Hampshire is to avoid the Massachusetts statute of limitations, New Hampshire having no "borrowing" statute.

The parties have stipulated the precise extent of the defendant's local activities. The defendant, a Michigan corporation, is engaged in the manufacture, distribution, and sale of various ethical drugs and like products. In the state of New Hampshire it does no manufacturing, and maintains no office or salesroom. It has no bank account, is not registered to do business, has designated no agent to receive process, and has engaged in no litigation except the present. Its nearest regional office is in Massachusetts. The branch manager there has supervision over the New Hampshire field manager, who is a resident of Massachusetts. Defendant has some half dozen New Hampshire salesmen, most of whom are New Hampshire residents. These visit New Hampshire physicians, hospitals and retail pharmacies to disseminate product information and to take orders. They have no authority to enter into contracts, and deliver nothing, except samples to physicians. Orders are forwarded to the Massachusetts office and upon acceptance are filled by parcel post or common carrier from a Massachusetts warehouse. The defendant advertises in the state by mail and otherwise.

We will assume for present purposes that the above activities constitute sufficient contacts with the state to constitute "presence" or the doing of business. International Shoe Co. v. Washington, 1945, 326 U.S. 310, 66 S.Ct. 154, 90 L. Ed. 95. The question is whether they are sufficient within principles of "fairness" and "convenience," substituted for earlier concepts of "presence" by that decision, when the cause of action is not only wholly unrelated to the forum and

the business conducted therein, but the plaintiff, too, is unconnected with the forum and is not "convenienced" by being able to sue there except that she has lost her right to sue in what would otherwise have been the fair and convenient state. To put it another way, where the type and degree of business that a corporation is doing in the unrelated state is such that it would be manifestly inconvenient for it to defend there, and the plaintiff's only convenience is a procedural advantage that would not obtain in the related state, where there had been no impediment to suit, do principles of fairness swing the balance in favor of the plaintiff, or the defendant?

We subscribe to the thesis advanced by A. T. von Mehren & D. T. Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv.L.Rev. 1121, 1141–1144 (1969), that *International Shoe* restricts, as well as enlarges, concepts of jurisdiction. In emphasizing "fairness" and "convenience" as the touchstone of due process, the Court said,

"It is evident that the criteria by which we mark the boundary line between those activities which justify the subjection of a corporation to suit, and those which do not, cannot be simply mechanical or quantitative. The test is *not merely,* as has sometimes been suggested, whether the activity, which the corporation has seen fit to procure through its agents in another state, is a little more or a little less. * * * Whether due process is satisfied must depend rather upon the quality and nature of the activity in relation to the fair and orderly administration of the Laws which it was the purpose of the due process clause to insure." 326 U.S.

319, 66 S.Ct. 159–160. (Emphasis ours.) *See also* 326 U.S. at 317, 66 S.Ct. 154.

We have emphasized the words "not merely" because it should be obvious that in all questions of degree there must come an ultimate transition point where a very minor difference will swing the balance. In this connection we note the Court's language at p. 318, 66 S.Ct. at p. 159,

"* * * [T]here have been instances in which the continuous corporate operations within a state were thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities. See Missouri, K. & T. R. Co. v. Reynolds, 255 U.S. 565, 41 S.Ct. 446, 65 L.Ed. 788; Tauza v. Susquehanna Coal Co., 220 N.Y. 259, 115 N.E. 915; cf. St. Louis S. W. R. Co. v. Alexander, *supra* [227 U.S. 218, 33 S.Ct. 245, 57 L.Ed. 486]."

Assuming the cases cited continued to have the Court's approval after it had propounded its new rationale, in none was the defendant's connection with the forum as intangible as in the case at bar.[1]

The importance of differences is well indicated by the later decision in Perkins v. Benguet Consol. Mining Co., 1952, 342 U.S. 437, 72 S.Ct. 413, 96 L.Ed. 485. The Court again spoke of "fairness," stating that "fairness to the corporation" was the "essence of the issue." There the defendant, a Philippine corporation, was engaged in mining in the Philippine Islands. Its operations were halted by WW II. The president, who was also general manager and principal stockholder, returned to his home in

---

1. In *Reynolds* the defendant maintained an agent within the state who had an office from which he sold travel "coupons," in effect tickets, and received payment therefor. In some instances he participated in handling complaints. In *Tauza* the defendant maintained a suite of offices in its name. These were occupied by a sales agent, salesmen whom he directed, and clerical employees. It maintained a bank account in the state under the control of the sales agent. Finally, in *Alexander*, the railroad maintained a local office in its name. Its resident agent, in that instance a freight agent, in addition to soliciting business, entertained and adjusted claims. As to plaintiff's interest in these cases, *see infra.*

Ohio, where he maintained an office and employed two secretaries. He opened a company bank account, appointed a stock transfer agent, kept the company's books, and held directors' meetings. He conducted such business as the company could carry on in Ohio under the circumstances, and later supervised the rehabilitation of the Philippine properties. The Court held that Ohio had jurisdiction over a suit by a nonresident plaintiff arising from the corporation's failure to pay dividends and issue stock certificates.

*Benguet Consol. Mining*, it seems to us, is significant in that it went beyond and gave some specificity to *International Shoe's* concern with fairness to the corporation by stressing the importance of "continuous and systematic" forum activities. 342 U.S. at 438, 445, 448, 72 S.Ct. 413. However, the meaning the Court attributed to these words can be understood only in the light of the care it manifested in scrutinizing the defendant's precise activities in the forum before it reached the conclusion that "under the circumstances above recited, it would not violate federal due process * * * to take * * * jurisdiction." 342 U.S. at 448, 72 S.Ct. at 420. No such articulation would have been needed if any minimal concept of presence, or doing business sufficient to obtain jurisdiction for other types of claims, was thought sufficient for non-related causes of action.[2]

■ It must also be important to consider the nature of the plaintiff's interest in the forum. In *Benguet Consol. Mining* the plaintiff's inconvenience in having to go to the Philippines to sue was apparent. In *Reynolds* the plaintiff was able to garnishee credits belonging to the principal defendant. In *Tauza* the plaintiff was a resident of the forum. In *Alexander* the suit was for nondelivery of freight to the plaintiff in the forum, and the cause of action accrued there.

■ If the plaintiff has some attachment to the forum, or if the defendant has adopted the state as one of its major places of business, we would have no question of the right of the state to subject the defendant to suit for unconnected causes of action. Nor would we even if the forum were not a major center of defendant's business but were nevertheless a community into whose business life the defendant had significantly entered as determined by the quality, substantiality, continuity, and systematic nature of its activities. Compare Volkswagen Interamericana, S.A. v. Rohlsen 1 Cir., 1966, 360 F.2d 437, 440, cert. denied 385 U.S. 919, 87 S.Ct. 230, 17 L. Ed.2d 143 (dictum). When, however, defendant's only activities consist of advertising and employing salesmen to solicit orders, we think that fairness will not permit a state to assume jurisdiction. *Cf.* Curtis Publishing Co. v. Birdsong, 5 Cir., 1966, 360 F.2d 344; L. D. Reeder Contractors of Arizona v. Higgins Indus. Inc., 9 Cir., 1959, 265 F.2d 768.[3]

Affirmed.

2. The limited extent of the holding in *Benguet Consol. Mining* has been pointed out in Developments in the Law—State Court Jurisdiction, 73 Harv.L.Rev. 909, 932 (1960). *See also* Kurland, The Supreme Court, the Due Process Clause and the In Personam Jurisdiction of State Courts, 25 U.Chi.L.Rev. 569, 602 (1958). As to whether a private individual's presence must necessarily establish jurisdiction, *see* D. Currie, The Growth of the Long Arm: Eight Years of Extended Jurisdiction in Illinois, 1963 Ill.L.F. 533, 583–584.

3. We have not overlooked the fact that our opinion in *Caso v. Lafayette Radio Electronics Corp.*, 1 Cir., 1966, 370 F.2d 707, contains dictum at possible variance with our present determination. In the course of indicating that under the then Massachusetts statute a resident plaintiff could not sue a nonresident defendant doing business in the state on a cause of action totally unrelated to the forum, we observed that jurisdiction would be constitutionally permissible, and based our decision upon a construction of the statute.