COASTAL VIDEO COMMUNICA-TIONS, CORP., d/b/a COASTAL TRAINING TECHNOLOGIES, a Virginia corporation, Plaintiff,

v.

THE STAYWELL CORPORATION, d/b/a Krames Communications, a Delaware corporation, and the Times Mirror Company, a Delaware corporation, Defendants.

No. 2:99cv198.

United States District Court,
E.D. Virginia,
Norfolk Division.

Aug. 2, 1999.

Megan E. Burns, Stephen Test, Clark & Stant, P.C., Virginia Beach, for Plaintiff.

Scott A. Zebrak, Venable, Baetjer, Howard & Civiletti, Washington, DC, Karlene W. Goller, The Times Mirror Company, Los Angeles, CA, for Defendants.

### OPINION AND ORDER

REBBECA BEACH SMITH, District Judge.

This matter comes before the court on the motion of The Staywell Corporation, d/b/a Krames Communications ("Krames"), to dismiss for lack of personal jurisdiction pursuant to Rule 12(b)(2) of the Federal Rules of Civil Procedure and plaintiff's motion seeking discovery on the issue of personal jurisdiction.[1] For the reasons stated below, the plaintiff's motion for discovery is **GRANTED,** pursuant to the guidelines contained in this opinion, and defendant's motion to dismiss is taken under advisement pending the outcome of the limited discovery granted herein.

### I. Factual Background

Plaintiff, Coastal Video Communications, Corp., d/b/a Coastal Training Technologies ("Coastal"), is a Virginia corporation engaged in the business of producing employee handbooks, video training programs, posters, and interactive CD–ROM courses. Coastal sells these products to companies throughout the United States. One of Coastal's products is an employee handbook titled "Defending Your Safety Zone: Back Protection."

The Staywell Company, d/b/a Krames Communications ("Krames"), is a Delaware corporation with its principal place of business in California. Krames is in the business of publishing patient education, health promotion, safety, and injury prevention training materials. As part of this effort, Krames publishes "Safety Zone: Using Natural Limits to Protect Your Back," for which it holds U.S. Copyright Registration Number TX 3 208 886. Krames has held the copyright on this material since November, 1991.

On January 26, 1999, Krames and Times Mirror sent Coastal a cease and desist letter, notifying Coastal that the "Defending Your Safety Zone" handbook was an infringement of Krames's "Safety Zone" copyright. The letter also discussed potential damages provided by law for copyright infringement and unfair competition.

---

1. The Times Mirror Company also filed a motion to dismiss for lack of personal jurisdiction. However, on May 18, 1999, at oral argument on the motion to dismiss, The Times Mirror Company was dismissed from this case by agreement of the parties.

On February 6, 1999, Coastal filed the instant action, seeking a declaration that the handbook, "Defending Your Safety Zone: Back Protection," does not infringe on copyrighted material contained in Krames's "Safety Zone" handbook. On April 8, 1999, the instant motion to dismiss for lack of personal jurisdiction was filed.

Coastal, through the affidavits of Philip Price, Vice President of Marketing and Sales, and Pamela Rice, In–House Legal Counsel, offers the following facts in support of its argument that the court has personal jurisdiction over Krames. None of plaintiff's assertions summarized here are disputed by the defendant.

Krames sells its products to managed care organizations, more than seventy percent of hospitals in the United States, and to more than 100,000 physicians, nurses, and health educators in private practice and hospitals. Krames also sells its products to customers in fifty countries on six continents. Krames has also sold and distributed products in Virginia in the past and currently. Krames mailed product catalogs to individuals in Virginia, as recently as Winter, 1998. Krames has also sent mailings to Virginia residents at their homes and business addresses containing order forms for Krames products and free product samples. According to the Rice Affidavit, Krames also has apparently distributed and sold products to at least three hospitals located in Virginia: Chesapeake General Hospital, Virginia Beach General Hospital, and Sentara Norfolk General Hospital. However, there is no indication in plaintiff's affidavits that Krames's "Safety Zone" publication was ever purchased by any of these hospitals. Furthermore, apart from allegations that the "Defense of the Safety Zone" publication is available for sale through the website and catalog and generic "products" have been sold in Virginia, there is no indication in the affidavits provided by plaintiff that any copies of Krames's "Safety Zone" publication were actually sold in Virginia. Krames is qualified to do business in Virginia and maintains a registered agent in Virginia.

Although The Staywell Corporation and Krames Communications are in reality the same company, there are two separate websites in operation. Krames's World Wide Web site advertises over 850 Krames products and allows customers to order products directly over the Web by completing order forms online. The Krames website also provides an "Ask Krames" service by which potential customers may e-mail questions about Krames products and services to the company. Krames offers the "Safety Zone" product over its website. In addition to the Krames site, there is also a separate site for Staywell. Staywell's website states that it is the "premier provider of integrated health improvement and behavior change programs." According to the site, Staywell is the exclusive creator and publisher of American Red Cross health and safety training programs and manuals. These materials are distributed by more than 1,300 local American Red Cross chapters around the country, including, presumably, those located in Virginia. Staywell publishes student course books, instructor training materials, videos, and slides for American Red Cross courses in First Aid, CPR, Aquatics, and mission-related care giving, such as child care, babysitting, and HIV/AIDS.

The website also describes Staywell products in the areas of health risk assessment, focused intervention, disease management, workplace wellness, and newsletter publishing, among others. The site lists a toll-free number to call with inquiries about Staywell products. Visitors to the site may download a free demonstration of a Staywell/Krames on-line "On Demand Patient Education Program." The Staywell site also lists job opportunities available with the company, and permits interested individuals to send a resume to the company over the Internet, as well as provides an e-mail address and fax number

to contact the company concerning employment opportunities.[2]

## II. Discussion

■ Federal Rule of Civil Procedure 12(b)(2) permits dismissal of an action lacking the requisite personal jurisdiction. A district court applies the relevant state statute to determine whether the court has personal jurisdiction over a defendant. *See* Fed.R.Civ.P. 4(e)-(f). Determining whether personal jurisdiction exists is a two-step process that requires an assessment of whether (1) the particular facts and circumstances of a case fall within the state's statutory language, and (2) the Due Process Clause of the Constitution would permit such jurisdiction to be asserted. *Ellicott Mach. Corp., Inc. v. John Holland Party, Ltd.*, 995 F.2d 474, 477 (4th Cir. 1993). However, because Virginia's long-arm statute extends personal jurisdiction to the fullest extent permitted by due process, *see English & Smith v. Metzger*, 901 F.2d 36, 38 (4th Cir.1990), the court's inquiry is collapsed into the question of whether asserting jurisdiction violates the Due Process Clause. *ESAB Group, Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir.1997). The plaintiff bears the burden of demonstrating personal jurisdiction by a preponderance of the evidence once its existence is questioned by the defendant. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir.1989). Resolution of the jurisdictional issue is a matter for the court. *Id.*

■ The Supreme Court has recognized that there are two types of jurisdiction that satisfy the requirements of the Due Process Clause. Jurisdiction over a suit that arises out of the defendant's activities in the forum state is called "specific jurisdiction." *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 n. 8, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984).

"General jurisdiction" arises when a defendant's contacts with the forum state are so "continuous and systematic," defendant may be subject to suit for causes of action entirely distinct from the in-state activities. *Id.* at 414 n. 9, 104 S.Ct. 1868. Plaintiff argues that the court has both specific and general jurisdiction over the defendant in this case.

### A. Specific Jurisdiction

In arguing that the court has specific, personal jurisdiction over Krames, Coastal claims the case is controlled by Virginia's long-arm statute, which states "[a] court may exercise personal jurisdiction over a person, who acts directly or by an agent, as to a cause of action arising from the person's ... [t]ransacting any business in this Commonwealth[.]" Va.Code Ann. § 8.01–328.1 (Michie 1992).

■ Due process is satisfied where the defendant has enough " 'minimum contacts' " with the forum state such that requiring him to defend his interests there would not " 'offend traditional notions of fair play and substantial justice.' " *English & Smith*, 901 F.2d at 38 (quoting *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Furthermore, the minimum contacts with the state must be such that the defendant could "reasonably anticipate being haled into court there." *Id.* at 40 (quoting *World–Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). " 'It is essential in each case that there be some act by which the defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws.' " *Federal Ins. Co. v. Lake Shore, Inc.*, 886 F.2d 654, 658 (4th Cir.1989)(quoting *Hanson v. Denckla*,

---

**2.** Plaintiff claims that products may also be ordered from the Staywell website. However, to the extent that the Staywell site permits a visitor to order products, it only provides a link to the product ordering system that is part of the Krames website at *www.*

*krames.com,* described above. Conversely, the Krames website also lists employment opportunities, however, the link leads to the Staywell site employment page. The two sites appear to be closely integrated.

357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

■ Plaintiff argues the sale of defendant's "Safety Zone" publication in Virginia constitutes "transacting business" and that the declaratory judgment action arises from these transactions. As the record stands now, however, there is no evidence that defendant has ever sold any copies of the "Safety Zone" publication in Virginia. Other than stating that the publication is offered for sale via the Internet, there is no allegation, statement, or indication of any kind in plaintiff's affidavits that even a single copy of defendant's "Safety Zone" publication was ever sold in the state of Virginia. It is not sufficient that the product may have been advertised in Virginia, either over the World Wide Web, or through mail order catalogs. *ESAB Group,* 126 F.3d at 625; *Medeco Security Locks, Inc. v. Fichet–Bauche,* 568 F.Supp. 405, 409 (W.D.Va.1983). Without proof that Krames transacted business relevant to the cause of action in Virginia, there is no specific jurisdiction over defendant.

■ More importantly, even if plaintiff was able to demonstrate that defendant sold the "Safety Zone" publication in Virginia, the court would still not have specific, personal jurisdiction over defendant because the declaratory judgment action currently before the court does not "arise from" the sale of defendant's publication.

Plaintiff insists that the activities of defendant with respect to the copyrighted material in Virginia are relevant and suffice to give the court personal jurisdiction over the copyright holder because the instant action is, at root, a copyright infringement action based on defendant's allegations that Coastal obtained and copied "Safety Zone" in Virginia.[3] However, such an argument overlooks the fact that defendant has made no allegations or claims before the court. Instead, it is Coastal who has attempted to bring Krames before the court in an attempt to obtain a declaration that Coastal's publication does not infringe on Krames's "Safety Zone" copyright. As Krames correctly points out, the declaratory judgment action does not hinge on whether copies of the copyrighted material are sold in Virginia. Instead, it is the existence of the "Safety Zone" copyright that gives rise to plaintiff's declaratory judgment action before this court, or to any infringement action that Krames would have brought against Coastal, had Coastal not preceded Krames to the courthouse. In point of fact, even if Krames had no contact whatsoever with the state of Virginia, Coastal's declaratory judgment action and Krames's potential infringement action would still exist. Simply put, where defendant sells the copyrighted product is not relevant to the existence of plaintiff's declaratory judgment cause of action on copyright infringement, nor to the question of whether the court has specific, personal jurisdiction over the defendant.[4]

Although the Fourth Circuit has not had occasion to address the precise issue of specific, personal jurisdiction in a declaratory judgment copyright action, the Fifth

---

3. Although properly acknowledging that the sending of a cease and desist letter alone does not constitute "transacting business" for purposes of the long-arm statute, plaintiff also relies on the fact that it received such a letter as an additional factor to be considered by the court in the personal jurisdiction analysis.

4. Where Krames sells the infringed product would also not be relevant to the issue of specific, personal jurisdiction in any infringement action Krames could have brought against Coastal. If Krames had sued Coastal for copyright infringement, personal jurisdic-

tion over Coastal could be based on where the infringing publication was sold. The same cannot be said of the infringed publication, however, because the copyright is infringed so long as the infringing publication is sold somewhere. There is no requirement that the infringing item be sold near the infringed item. Because Coastal was not content to wait for Krames to bring an infringement action in a forum where Coastal was subject to personal jurisdiction, Coastal is now confronted with the much more difficult task of obtaining personal jurisdiction over the "natural plaintiff."

Circuit has decided a case remarkably similar to the facts of this case. In *Ham v. La Cienega Music Co.*, 4 F.3d 413 (5th Cir.1993), a case involving a declaratory judgment action for noninfringement of a registered copyright, the Fifth Circuit held that the defendant was not subject to personal jurisdiction because the suit did not arise from sales of the copyrighted material in the forum state. As in the present case, Ham, the plaintiff in the Fifth Circuit case, brought a declaratory judgment action after receiving a letter notifying him of possible copyright infringement with respect to a song to which he owned the rights. Ham asserted personal jurisdiction over the defendants based on the fact that the defendants had exploited the rights to the allegedly infringed song in the forum state (Texas) by selling recordings of the infringed song and the mailing of the cease and desist letter. Although the Fifth Circuit agreed with Ham that the defendants' activities in exploiting the song gave them a sufficient connection to Texas, the court went on to say that plaintiff

> has demonstrated at best a highly attenuated relationship between the subject matter of the instant declaratory judgment action and distribution of music in Texas by [defendants]. Ham alleges no injury flowing from that distribution. Rather, resolution of this action depends solely upon whether "La Grange" infringed copyrights owned by [defendants]. Exploitation of the "Boogie Chillen" copyrights by the defendants in no way relates to the merits of that question.

*Ham*, 4 F.3d at 416. As in *Ham*, even if defendant in the present case exploited the copyright to the "Safety Zone" publication by selling it to every hospital, doctor, and nurse in the state, the sale of "Safety Zone" is in no way relevant to whether or not plaintiff's publication infringes defendant's copyright. As a result, plaintiff's cause of action does not arise from Krames's sale of "Safety Zone" in Virginia, and the court does not have specific, personal jurisdiction over Krames.

The cases cited by plaintiff do not convince the court to the contrary. Plaintiff first relies on a line of Federal Circuit patent cases finding personal jurisdiction where the alleged patent infringing plaintiff received cease and desist letters from the patent-holding defendant and the patented product was marketed and sold in the forum state. *See Genetic Implant Systems, Inc. v. Core–Vent Corp.*, 123 F.3d 1455 (Fed.Cir.1997); *Akro Corp. v. Luker*, 45 F.3d 1541 (Fed.Cir.1995); *see also Nova Biomedical Corp. v. Moller*, 629 F.2d 190 (1st Cir.1980) (holding that out-of-state patent holder could be subject to long-arm jurisdiction given patent holder's extensive and on-going contacts with forum through licensing agreement for patented product). In each case, though, the court found it significant that the out-of-state patent holder had a licensing agreement, or its equivalent, with a company competing with the plaintiff in the forum state. The licensing agreements obligated the patent holder to maintain the patent and reimburse the licensee for defense costs related to third-party infringement suits relating to the subject patent. By using the licensing agreements or similar arrangements, the court found that the out-of-state patent holders not only purposefully directed activities at the forum state, but also availed themselves of the laws and protections of the forum state. In the present case, there was no similar legal arrangement that bound the copyright holder to the forum state. In addition, the interpretation of the Federal Circuit in this regard has not been universally accepted. *See Polymers, Inc. v. Ultra Flo Filtration Sys., Inc.*, 33 F.Supp.2d 1008, 1017 (M.D.Fla.1998) (stating that plaintiff failed to establish that declaratory judgment arises out of defendant's contact with forum state because defendant's "distribution of its own patented goods in Florida is not intimately or sufficiently connected with [plaintiff's] action to obtain a declaration that [plaintiff's] goods do not infringe [defendant's] patents"); *Zumbro, Inc. v.*

*California Natural Products,* 861 F.Supp. 773, 780 (D.Minn.1994) (holding that "the activities in which [defendant] has engaged in order to exploit those patents, including producing and promoting products covered by the patents" bears no relationship to the subject of the declaratory judgment action, which dealt with whether the patents were valid and, if so, whether plaintiff infringed them).

The remaining cases relied on by plaintiff to support its specific jurisdiction argument are inapposite. In *Carter–Wallace, Inc. v. Ever–Dry Corp.,* 290 F.Supp. 735, 739 (S.D.N.Y.1968), the court found that there was personal jurisdiction over the defendant corporation not because the declaratory judgment action arose from defendant's sales in the district, but because defendant "systematically, regularly, and continuously." did business in the forum state, *Carter–Wallace,* 290 F.Supp. at 739, a formulation akin to what is recognized today as general jurisdiction. *See Helicopteros Nacionales,* 466 U.S. at 414 n. 9, 104 S.Ct. 1868.[5] In *CompuServe, Inc. v. Patterson,* 89 F.3d 1257 (6th Cir.1996), the court found that the declaratory judgment trademark action arose from defendant's purposeful contacts with the forum state because the right that defendant sought to protect, a common law trademark, for which plaintiff wanted a declaration of noninfringement, was governed by Ohio law and could only come into existence as a result of the operation of Ohio law, which was triggered by defendant's contact with the forum. *CompuServe, Inc.* is not applicable to the current case because the defendant's copyright did not result from the operation of Virginia law, but, instead, was issued under federal copyright law.

In keeping with the rationale of *Ham, Polymers, Inc.,* and *Zumbro, Inc.,* this court holds that plaintiff's declaratory judgment action, dealing with whether its product infringed defendant's copyright,

does not arise from defendant's sale of the copyrighted material or defendant's other exploitation of the copyright in Virginia. Accordingly, the court **FINDS** that it does not have specific, personal jurisdiction over defendant Krames.

## B. General Jurisdiction

■ The lack of specific jurisdiction, however, does not end the inquiry. Even though the present action does not "arise from" defendant's in-state sales of "Safety Zone," the court may still exercise personal jurisdiction over a defendant if it has "general jurisdiction," in which the requisite "minimum contacts" between the defendant and the forum state are "fairly extensive." *Ratliff v. Cooper Laboratories, Inc.,* 444 F.2d 745, 748 (4th Cir.1971). "Conduct of single or isolated items of activities in a state in the corporation's behalf are not enough to subject it to [general jurisdiction]." *International Shoe Co. v. Washington,* 326 U.S. 310, 316, 66 S.Ct. 154, 90 L.Ed. 95 (1945). Even "continuous activity of some sorts [by a corporation] within a state is not enough to support [general jurisdiction over the corporation]." *Id.* at 318, 66 S.Ct. 154. Only when the "continuous corporate operation within a state [is] thought so substantial and of such a nature as to justify suit against it on causes of action arising from dealings entirely distinct from those activities" may a court assert general jurisdiction over a corporate defendant. *Id.* The Fourth Circuit has also stated that "broad constructions of general jurisdiction should be generally disfavored." *Nichols v. G.D. Searle & Co.,* 991 F.2d 1195, 1200 (4th Cir.1993).

■ Defendant first argues that it cannot be subject to general jurisdiction without the Virginia long-arm statute being satisfied. In essence, defendant argues that a finding of specific jurisdiction is a necessary predicate to a finding of general

---

**5.** Moreover, *Carter–Wallace* pre-dates many of the Supreme Court's important personal jurisdiction cases, such as *Helicopteros Nacio-* *nales,* and the language cited by plaintiff is merely dicta.

jurisdiction. Such an argument is not supported by logic or the law. To require the Virginia long-arm statute to be satisfied before there can be a finding of general jurisdiction would render the concept of general jurisdiction a nullity. Once the long-arm statute is satisfied, the court has specific, personal jurisdiction over the person and there is then no need to proceed further and consider the question of general jurisdiction. The Supreme Court has specifically defined specific and general jurisdiction, and, by definition, general jurisdiction clearly exists only when the cause of action does *not* arise from defendant's contacts with the forum state. *See Helicopteros Nacionales*, 466 U.S. at 414 n. 9, 104 S.Ct. 1868 (defining general jurisdiction as the "exercise[ ][of] personal jurisdiction over a defendant in a suit not arising out of or related to the defendant's contacts with the forum").

■ Moreover, contrary to defendant's assertion, general jurisdiction is available under Virginia law. In *Witt v. Reynolds Metals Co.*, 240 Va. 452, 397 S.E.2d 873 (Va.1990) (Lacy, J.), the Virginia Supreme Court held that a corporation that "regularly and systematically does business in Virginia" may be subject to personal jurisdiction "on a cause of action arising out of events *unrelated* to the business conducted in the Commonwealth." *Id.* 397 S.E.2d at 876 (emphasis added). A number of federal courts have also found general, personal jurisdiction over a defendant without having first satisfied a provision of Virginia's long-arm statute. *See, e.g.,Bonney v. Roelle*, 117 F.3d 1413, 1997 WL 407831 at *8 (4th Cir.1997) (unpublished) (applying general jurisdiction principles to defendants and holding that district court possessed "at least" general jurisdiction over them because of the extent of business conducted by defendants in Virginia); *Verosol B.V. v. Hunter Douglas, Inc.*, 806 F.Supp. 582, 591 (E.D.Va.1992) (Payne, J.) (applying general jurisdiction principles to business activities in Virginia after determining that there was no specific jurisdic-

tion under Virginia long-arm statute where plaintiffs' cause of action did not arise out of defendant's shipment of goods into Virginia). Consequently, defendant's argument fails and Krames may be subject to general, personal jurisdiction, if the quantity and nature of Krames's contacts with Virginia are continuous and "fairly extensive," such that Krames could reasonably expect to be subject to suit in Virginia for causes of action not directly related to its contacts with Virginia. *Helicopteros Nacionales*, 466 U.S. at 414 n. 9, 104 S.Ct. 1868; Ratliff, 444 F.2d at 748.

The facts of this case, however, present the court with difficulties in applying traditional general jurisdiction principles. For example, the Fourth Circuit has held that advertising and solicitation activities alone do not constitute the "minimum contacts" necessary to establish general personal jurisdiction over a defendant. *Ratliff*, 444 F.2d at 748 (quoting *Seymour v. Parke, Davis & Co.*, 423 F.2d 584, 587 (1st Cir. 1970)). Yet, in the instant case, it is undisputed that the Krames/Staywell websites went well beyond mere advertising and solicitation of products. The sites allow the on-line visitor to purchase all of Krames's products through the website, without ever speaking to a Krames representative. In addition, if a customer did have questions, the site also provides a mechanism for those questions to be posed and answered through an exchange of e-mail. In essence, Krames/Staywell has established an on-line storefront that is readily accessible to every person in Virginia with a computer, a modem, and access to the World Wide Web. Thus, instead of using physical assets such as sample-bearing salesmen, or traditional business offices to reach their Virginia-based hospital, Red Cross, and health care provider customers, Krames is able to provide the same level of service via the Internet's instant connections.

The difficulties in applying personal jurisdiction to Internet-based contacts with a forum are legion, and have been repeated-

ly discussed by many federal district courts. *See, e.g., Atlantech Distribution, Inc. v. Credit General Ins. Co.,* 30 F.Supp.2d 534, 536–37 (D.Md.1998); *Mieczkowski v. Masco Corp.,* 997 F.Supp. 782, 785–86 (E.D.Tex.1998); *Zippo Mfg., Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1123–24 (W.D.Pa.1997). Moreover, the difficulty is compounded in this case by the fact that, unlike the vast majority of personal jurisdiction cases involving Internet-based contacts with the forum,[6] the court here is presented with the question of to what extent defendant's Internet-based contacts, combined with traditional business contacts, support the exercise of *general* personal jurisdiction over Krames.

One of the few cases to exercise general personal jurisdiction over a defendant grounded, in substantial part, on the Internet-based contacts with the forum state was *Mieczkowski,* 997 F.Supp. at 782. *Mieczkowski* was a products liability action brought against the North Carolina manufacturer of a bunk bed owned by the Texas plaintiffs. The bed was first purchased from a store located in Washington, D.C., and delivered to a home in Virginia. The bed's original owners subsequently sold the bed to the plaintiff in North Carolina, and the plaintiffs then moved to Texas. The district court first held that there was no specific

jurisdiction over the defendant because it was not foreseeable "that the bed in question would make its way to Texas while in the stream of commerce." *Id.* at 785. The court then went on to examine the question of general jurisdiction over the defendant. The plaintiffs presented evidence that over the previous six years defendant sold and shipped $5.7 million in products to Texas residents; consummated 250 business transactions totaling $717,000 in the year prior to the filing of the lawsuit; and, received 3.2 percent of it's gross sales income from Texas residents in the previous four years. The district court also found it significant that defendant maintained a World Wide Web site accessible to over two million Texas residents. In *Mieczkowski,* the defendant's website provided categories of furniture and allowed a visitor to the site to view individual furniture pieces. A visitor to the site could print an order form to complete their purchase after reviewing their selections on-line. In addition, customers could check the status of their order through the Internet site as well. Finally, visitors to the site could communicate directly with defendant's on-line sales representatives via e-mail. Relying on the analysis contained in *Zippo Mfg.,* 952 F.Supp. at 1124,[7] the court held that

**6.** The vast majority of Internet-based personal jurisdiction cases involve specific jurisdiction. *See, e.g., Cybersell, Inc. v. Cybersell, Inc.,* 130 F.3d 414 (9th Cir.1997); *Heroes, Inc. v. Heroes Found.,* 958 F.Supp. 1 (D.D.C.1996); *Zippo Mfg.,* 952 F.Supp. at 1127.

**7.** In *Zippo Mfg.,* the district court for the western district of Pennsylvania formulated a "sliding scale" test to determine whether a defendant's contact with the forum state through a site on the World Wide Web supported the exercise of specific personal jurisdiction. The court stated:

At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is

proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise [of] personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site. *Zippo Mfg.,* 952 F.Supp. at 1124 (citations omitted). Like the *Mieczkowski* court, a number of other courts have also used the *Zippo Mfg.* test to analyze general personal jurisdiction. *See, e.g., Atlantech Distribution, Inc.,* 30 F.Supp.2d at 537 (stating that *Zippo Mfg.* test was "widely accepted" and holding that pas-

the potential of defendant's interactive website to reach millions of Texans, combined with the extent of defendant's traditional business contacts "leads the Court to the conclusion that the defendant maintains substantial, continuous and systematic contacts with Texas sufficient to subject it to personal jurisdiction." *Id.* at 788. The court specifically declined to rule on whether either the website or the traditional business contacts, standing alone, justified a finding of general jurisdiction. *Id.*

Superficially, the facts in *Mieczkowski* are very analogous to those of the present case. As in *Mieczkowski,* defendant in this case maintains a World Wide Web site with a high degree of interactivity. In addition, it also appears from the record that defendant maintains traditional business contacts with Virginia through its product sales to at least three Virginia hospitals. However, it appears that the record before the district court in Texas was much more developed, especially with regard to the traditional business contacts. The court in *Mieczkowski* had access to defendant's historical sales figures to Texas, and could determine not only the total volume of sales made to Texas residents, but also the percent of Texas sales relative to defendant's total sales. In addition, although providing a sound basis to begin analyzing the use of an interactive website to support the exercise of general personal jurisdiction, it is also clear to the court that the analysis in *Mieczkowski* is not complete.[8]

When conducting the general jurisdiction analysis, it is not enough to find that an interactive website has the potential to reach a significant percentage of the forum state's population. *Origin Instruments Corp. v. Adaptive Computer Sys., Inc.,* 1999 WL 76794 at *4 (N.D.Tex. Feb.3, 1999) ("Personal jurisdiction should not be premised on the mere possibility that a Defendant may be able to do business with Texans over its web site (sic), with nothing more.") Instead, for the contact to be continuous and systematic, there must be proof that the website is actually reaching a portion of the state's population. *See Loumar v. Smith,* 698 F.2d 759, 763 (1983) (stating "the amount of business obtained from the advertisements" was relevant to the question of whether placing advertisements in national magazine alone was sufficient for exercise of personal jurisdiction). In traditional terms, the placing of a store or salesmen in a state is not sufficient to confer general jurisdiction over a defendant without some evidence that the store or salesmen actually generated sufficient sales in the forum state for the contact to be considered continuous and systematic. *Nichols,* 991 F.2d at 1200 (holding defendant's solicitation activities, consisting of seventeen to twenty-one salesmen, two supervisors, and their automobiles, samples, and promotional materials, insufficient to establish general jurisdiction over defendant). In this respect, it is certainly true that the mere existence of an interactive website, without proof that there was continuous and systematic contact between the forum state and website, is not sufficient for a court to exercise

---

sive web site did not support exercise of general personal jurisdiction); *SF Hotel Co. v. Energy Inv., Inc.,* 985 F.Supp. 1032, 1034–35 (D.Kan.1997) (relying on *Zippo Mfg.* analysis in general personal jurisdiction case); *Weber v. Jolly Hotels,* 977 F.Supp. 327, 333 (D.N.J. 1997) (same).

8. When used in the context of analyzing specific jurisdiction, the *Zippo Mfg.* test is sufficient because, by definition, specific jurisdiction involves a defendant's contact, even if it is only one contact, with the forum state. In

the general jurisdiction context, however, the defendant's contacts with the forum state must be continuous and systematic. Therefore, there must be an examination of the quantity and nature of the Internet-based contacts with the forum, a step that is not adequately reflected in the *Zippo Mfg.* analysis. *See* Steven Betensky, *Jurisdiction and the Internet,* Pace L.Rev. 1, 11–12 (1998) (stating that whether "defendant's site [was] accessed by users located in the forum state" is relevant to determining whether an interactive website could support personal jurisdiction).

general jurisdiction. *Cf. Origin Instruments Corp.*, 1999 WL 76794 at *4.

However, it is still incumbent upon the court to examine the quantity and extent of the contacts between the defendant and the forum state. It is also significant that defendant's site is commercial in nature, in that it is designed to not only advertise and solicit sales, but also provides a direct method by which a customer may purchase defendant's products. As with traditional business contacts, the most reliable indicator of the nature and extent of defendant's Internet contact with the forum state will be the amount of sales generated in the state by or through the interactive website. In addition, it may also be possible to determine how many times a website has been accessed by residents or businesses located in a specific state. Such information, if available, would also be relevant to the determination of general personal jurisdiction. *See, e.g., Cybersell, Inc.*, 130 F.3d at 419 ("Some courts have also given weight to the number of 'hits' received by a web (sic) page from residents in the forum state, and to other evidence that Internet activity was directed at, or bore fruit in, the forum state.").

Given the significant gaps in the record as to the nature and extent of both defendant's traditional business contacts with Virginia and also defendant's Internet-based contacts with Virginia, information that is uniquely in the control of the defendant, the court **GRANTS** plaintiff's motion for discovery on the issue of general personal jurisdiction over the defendant. In accordance with the principles contained in this opinion, plaintiff is **DIRECTED** to seek discovery of information relevant to the issue of the court's general personal jurisdiction over defendant within fifteen (15) days of the date of this order. Within seventy-five (75) days of the date of this order, the parties are **DIRECTED** to set a hearing with the calendar clerk on defendant's motion to dismiss. The parties shall file any supplemental briefs with the court on the issue of general personal jurisdic-

tion no later than ten (10) days before the hearing date.

The Clerk is **DIRECTED** to send a copy of this Opinion and Order to counsel for the parties.

It is so **ORDERED**.