**Joseph P. MOREL, a minor By and Through Robin MOOREHEAD, his parent and next friend, Plaintiff,**

v.

**The ESTATE OF John J. DAVIDSON, Kenneth Freed, in his capacity as Executor of the Estate of the late John J. Davidson, Amateur Athletic Union, and New England Mariners, Inc., Defendants.**

No. CA. 99–480 L.

United States District Court,
D. Rhode Island.

July 18, 2001.

Robert M. Brady, East Providence, RI, William Arthur Poore, Poore & Rosenbaum, Providence, RI, for Plaintiff.

Neil J. Straub, Melissa M. Tartaro, Straub & Lyons, LLP, Salem, MA, William Wheatley, Law Offices of Michael Rudman, Fall River, MA, Susan M. Carlin, Stephen R. Famiglietti, Famiglietti & Carlin, Matthew F. Medeiros, Little, Bulman, Medeiros & Whitney, Providence, RI, for Defendants.

## OPINION AND ORDER

LAGUEUX, District Judge.

The matter is before the Court on the motion of defendant Estate of John J. Davidson (the "Estate") to dismiss. The Estate, represented by Kenneth Freed as Executor, seeks dismissal on two grounds: (1) lack of personal jurisdiction and (2) improper venue. The Estate maintains that Davidson lacked the requisite "continuous and systematic" contacts with Rhode Island to subject the Estate to this forum's in personam jurisdiction. *See Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 415–16, 104 S.Ct. 1868, 80

L.Ed.2d 404 (1984)(discussing *Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 438, 72 S.Ct. 413, 96 L.Ed. 485 (1952)). Further, the Estate claims that even if this Court has personal jurisdiction over it, the case should be dismissed because Massachusetts, not Rhode Island, is the proper venue for this action. *See* Fed.R.Civ.P. 12(b)(3).

Joseph P. Morel ("plaintiff"), a minor and Rhode Island resident, has brought this diversity suit by and through Robin Moorehead, his mother and next friend, against the defendants seeking $1,000,000 in damages for physical and mental injuries plaintiff sustained as a result of repeated sexual assaults allegedly committed upon him by Davidson, now deceased. For the reasons discussed below, the Court grants the Estate's motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) because plaintiff has not established that Davidson had sufficient contacts with Rhode Island to subject the Estate to personal jurisdiction in this forum.

**Background**

Plaintiff alleges that from the Spring of 1997 to the Spring of 1998 he was repeatedly sexually assaulted by John J. Davidson, then coach of the New England Mariners, an Amateur Athletic Union ("AAU") baseball team of which plaintiff was a member. In addition to his coaching duties, Davidson was the primary officer, stockholder, and employee of New England Mariners, Inc. ("Mariners"), a Massachusetts corporation. The Mariners recruited outstanding high school age baseball players to travel throughout the East Coast and play games against other AAU teams.

Davidson recruited players to play on his baseball team by distributing pamphlets, advertising, and playing exhibition games against local high school teams. Some of these recruiting efforts were directed at players from Rhode Island. In 1996, plaintiff received one of the Mariners' pamphlets from Ed Halloway, the head baseball coach at Bishop Hendricken High School in Rhode Island. According to plaintiff, Halloway distributed these pamphlets at Davidson's request. After viewing these pamphlets, plaintiff applied to be a member of the Mariners and, through his parents, paid the requisite fees. His application was accepted and plaintiff joined the Mariners ball club in the Spring of 1997.

Plaintiff alleges that from the Spring of 1997 through the Spring of 1998 he was sexually assaulted, battered, and molested by Davidson. In early October 1998 Davidson was criminally indicted on 28 counts of sexual assault and molestation with respect to plaintiff. Davidson never stood trial on these charges, however, because he took his own life later that month. Shortly after Davidson's death, Kenneth Freed was appointed as Executor of the Estate, and he is sued in that capacity in this case.

In addition to the Estate, plaintiff has sued the AAU. Plaintiff alleges that the AAU owed a duty to players on AAU sanctioned teams to investigate and determine that coaches and other authority figures in AAU sanctioned events are appropriate coaches and monitors of young children. Plaintiff further asserts that the AAU knew, should have known, or should have informed itself as to the propensities of Davidson to molest minor boys. Plaintiff alleges that the failure to investigate Davidson's propensities and background was negligence and that this negligence was a direct and proximate cause of plaintiff's injuries. The AAU answered plaintiff's Second Amended Complaint and does not join in the Estate's motion to dismiss for lack of jurisdiction or improper venue.

Plaintiff also sued the Mariners, but plaintiff and the Mariners have settled that portion of the case. Because the plaintiff is a minor, the Court appointed a Guardian Ad Litem to safeguard plaintiff's interests. On January 17, 2001, this Court granted plaintiff's Motion to Approve and Accept the Report and Recommendations of the Guardian Ad Litem and approved and authorized the settlement between plaintiff and the Mariners as set forth in the Guardian Ad Litem's Report.

With that background in mind, the Court now directs its attention to the one matter currently before it, the Estate's motion to dismiss for lack of jurisdiction or improper venue.

## DISCUSSION

■■■ Plaintiff filed this suit in federal court invoking this Court's diversity jurisdiction. *See* 28 U.S.C. § 1332 (1994 & Supp. IV 1998). Simply put, a federal district court has subject matter jurisdiction over a suit in which the plaintiff is a citizen of a different state from all of the defendants and the amount in controversy exceeds $75,000. § 1332(a)(1). In this case, the diversity requirement is satisfied because plaintiff is a citizen of Rhode Island while all of the named defendants are citizens of states other than Rhode Island. For purposes of diversity, an executor of an estate adopts the citizenship of the decedent. § 1332(c)(2). In this case, because Davidson was a citizen of Massachusetts, his executor is considered a citizen of Massachusetts. *Id.* Under 28 U.S.C. § 1332(c)(1), corporations are considered citizens of the state in which they are incorporated and the state in which they have their principal place of business. *Id.* Therefore, the New England Mariners Inc., which is incorporated in Massachusetts and has its principal place of business in Massachusetts, is a resident of Massachusetts. The same standard applies to a non-profit corporation. The AAU, a non-profit corporation, is incorporated in New York and maintains its principal place of business in Florida. Because complete diversity exists between plaintiff and all the defendants and plaintiff's claim for damages exceeds the statutory minimum of $75,000, this Court has subject matter jurisdiction over this controversy. *See* § 1332.

■■■ Although meeting the diversity requirements enables plaintiff to bring this suit in some federal court, it does not ensure that the case is appropriately before this Court. Before a court may hear a case, it must have both subject matter jurisdiction over the dispute and personal jurisdiction over the parties to the litigation. The Estate argues that this Court does not have personal jurisdiction over it and that this Court should dismiss the suit against it on that basis.

■■■ The personal jurisdiction requirement can be satisfied in two ways. First, a court has specific jurisdiction over a defendant when the harm complained of by the plaintiff resulted directly from the defendant's contact with the forum state. *Helicopteros*, 466 U.S. at 414 n. 8, 104 S.Ct. 1868. *See also Donatelli v. Nat'l Hockey League*, 893 F.2d 459, 462–63 (1st Cir.1990)(citing *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 317–18, 66 S.Ct. 154, 90 L.Ed. 95 (1945)). Second, a court has general jurisdiction over a defendant when that defendant has such continuous and systematic contacts with a particular forum that he could reasonably expect to be sued there. *Helicopteros*, 466 U.S. at 414 n. 9, 104 S.Ct. 1868. *See also Donatelli*, 893 F.2d at 462–63 (citing *Int'l Shoe*, 326 U.S. at 317–18), 66 S.Ct. 154; *Capizzano v. Walt Disney World Co.*, 826 F.Supp. 53, 55 (D.R.I.1993). Initially, plaintiff argued that both specific and general jurisdiction applied in this case. At oral argument,

however, plaintiff abandoned his specific jurisdiction argument and relied instead on his argument that Davidson's contacts with Rhode Island were sufficient to subject the Estate to general personal jurisdiction in Rhode Island. As a result, the Court focuses its attention on whether plaintiff has demonstrated that general jurisdiction applies in this instance.

█ In deciding whether an executor is subject to suit in a particular jurisdiction, a district court looks to the law of the forum state. Fed.R.Civ.P. 17(b). *See also Martel v. Stafford*, 992 F.2d 1244, 1246 (1st Cir.1993). The Rhode Island long-arm statute permits courts in this forum to exercise jurisdiction over non-resident individuals or their executors if such jurisdiction accords with due process under the Fourteenth Amendment to the United States Constitution. *See* R.I. Gen. Laws § 9–5–33 (1997); *Donatelli*, 893 F.2d at 461; *McKenney v. Kenyon Piece Dye Works, Inc.*, 582 A.2d 107, 108 (R.I.1990); *Conn v. ITT Aetna Fin. Co.*, 105 R.I. 397, 252 A.2d 184, 186 (1969). The long-arm statute states, in relevant part, that:

> every individual not a resident of this state or his or her executor ... that shall have the necessary minimum contacts with the state of Rhode Island, shall be subject to the jurisdiction of the state of Rhode Island, and the courts of this state shall hold ... such nonresident individuals or their executors ... amenable to suit in Rhode Island in every case not contrary to the provisions of the constitution or laws of the United States.

R.I. Gen. Laws § 9–5–33(a). Although the issue has not yet been decided by a Rhode Island court, Rhode Island's long-arm statute makes clear that the executor stands in the shoes of the decedent for purposes of personal jurisdiction. R.I. Gen. Laws § 9–5–33(a). In the past, common law directed that an executor could only be sued in the state in which he was appointed. *See Martel*, 992 F.2d at 1246 (discussing the Massachusetts common law rule); *Gandolfo v. Alford*, 31 Conn.Supp. 417, 333 A.2d 65, 66 (Ct.1975)(stating "that the general common-law rule is that an executor or administrator of an estate can sue and be sued only in a jurisdiction in which he has been so appointed.") In the last forty years, however, many state legislatures, including the Rhode Island General Assembly, have abrogated that common law notion by enacting long-arm statutes which expressly provide for jurisdiction over the executor if jurisdiction could have been maintained over the decedent. *See Eubank Heights Apartments, Ltd. v. Lebow*, 615 F.2d 571, 574 (1st Cir.1980)(concluding that jurisdiction over the decedent's estate was appropriate if the Texas long-arm statute would have provided jurisdiction over the decedent had he not died); *Crosson v. Conlee*, 745 F.2d 896, 900–01 (4th Cir.1984)(concluding that the decedent's contacts with Virginia were sufficient to exercise personal jurisdiction over the foreign executor of the decedent's estate); *Nile v. Nile*, 432 Mass. 390, 734 N.E.2d 1153, 1159 (Ma.2000)(holding that the Massachusetts long-arm statute provides for jurisdiction over a non-resident personal representative when the decedent had sufficient contacts with the forum such that the decedent would have been subject to personal jurisdiction had he lived); *V.H. v. Estate of Birnbaum*, 543 N.W.2d 649, 655 (Minn.1996)(concluding that "the decedent's foreign personal representative is subject to in personam jurisdiction under the long-arm statute if the decedent would be subject to jurisdiction if alive."); *Hayden v. Wheeler*, 33 Ill.2d 110, 210 N.E.2d 495, 497 (1965)(holding that the foreign administrator of a deceased non-resident was subject to jurisdiction under the Illinois state long-arm statute because dece-

dent would have been subject to jurisdiction had he lived); *Gandolfo*, 333 A.2d at 69 (holding that Connecticut's long-arm statute modified the common law rule and granted Connecticut's courts jurisdiction over suits brought against an executor of a foreign estate when the nonresident decedent could have been sued in Connecticut if he had lived). The Rhode Island General Assembly consciously enacted the State's long-arm statute to preserve Rhode Island as a forum, to the extent permissible under the Constitution, for the adjudication of claims made by Rhode Island citizens allegedly injured by non-residents. Therefore, the central question in this case can be phrased as follows: Did Davidson have the necessary continuous and systematic contacts with the state of Rhode Island while alive to cause him to be subject to general personal jurisdiction in Rhode Island?

■ Because the state long-arm statute extends to the limit permitted by the Constitution, the Court now examines whether exercising personal jurisdiction over the Estate would violate the due process clause of the Fourteenth Amendment. *Donatelli*, 893 F.2d at 461. Due process requires that a foreign defendant have "continuous and systematic" contacts with a particular state before he is subjected to the general personal jurisdiction of that state's courts. *Helicopteros*, 466 U.S. at 415, 104 S.Ct. 1868. Suing a defendant in a forum when he lacks sufficient contacts to be subject to suit there would "offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe*, 326 U.S. at 316, 66 S.Ct. 154 (quoting *Milliken v. Meyer*, 311 U.S. 457, 463, 61 S.Ct. 339, 85 L.Ed. 278 (1940)).

Because being subject to a state's general personal jurisdiction means that a foreign defendant can be forced to defend a suit regarding any issue in that state, the standard for establishing general jurisdiction is by no means perfunctory. In *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984), the families and representatives of four United States citizens who died in a helicopter crash in South America brought suit in Texas against Helicopteros Nacionales de Colombia, S.A. ("Helicol"), the Colombian corporation that owned the helicopter that crashed. Even though Helicol was a Colombian corporation with its principle place of business in that country, the families alleged that it had the necessary contacts with Texas to subject it to that state's general jurisdiction. *Id.* at 409–10, 104 S.Ct. 1868. These contacts consisted of sending its chief officer to Houston for a contract-negotiating session; accepting into a New York bank account checks drawn on a Houston bank; purchasing helicopters, equipment, and training services from a Texas corporation for more than $4 million; and sending personnel to facilities in Fort Worth, Texas for training on these helicopters. *Id.* at 411, 104 S.Ct. 1868. The Texas long-arm statute, like Rhode Island's, extended jurisdiction to the limits permissible under the Constitution. *See id.* at 413, 104 S.Ct. 1868. But despite Helicol's significant contacts with Texas, the Supreme Court concluded that these contacts did not rise to the constitutionally required level of "continuous and systematic" contacts necessary to subject Helicol to general jurisdiction in Texas. *Id.* at 418–19, 104 S.Ct. 1868.

■ The same conclusion must be reached in this case. By rule, a plaintiff bears the burden of establishing that jurisdiction is appropriate as to a particular defendant. *See Wood v. Angel*, 707 F.Supp. 81, 83 (D.R.I.1989). Here, plaintiff has not met this burden. An affidavit filed by plaintiff's mother and next friend

Robin Moorehead provides the only evidence in the record relating to Davidson's contacts with Rhode Island. *See* Moorehead Aff. ¶¶ 3–5. But Moorehead's affidavit establishes only that Davidson came to Rhode Island on occasion to advertise the Mariners and recruit players for the team. *Id.* That limited contact does not meet the constitutionally required standard of "continuous and systematic" contacts necessary to subject Davidson and subsequently the Estate to general personal jurisdiction in Rhode Island. The First Circuit has repeatedly held that advertising, even when accompanied by the solicitation of orders, does not provide sufficient minimum contacts for the exercise of general jurisdiction. *See Glater v. Eli Lilly & Co.,* 744 F.2d 213, 217 (1st Cir.1984); *Seymour v. Parke, Davis & Co.,* 423 F.2d 584, 587 (1st Cir.1970). In *Glater,* the defendant corporation advertised in the forum state of New Hampshire and employed eight salesmen within the state, three of whom were residents. *Glater,* 744 F.2d at 214–15. Yet, the First Circuit concluded that those contacts were insufficient to establish general jurisdiction over the defendant corporation in that forum. *Id.* at 217. Likewise in *Seymour,* the First Circuit held that the defendant corporation lacked the necessary contacts to be subject to the forum state's general jurisdiction, even though the defendant employed several salesmen who disseminated product information and solicited orders in the forum state and advertised in the forum state as well. *Seymour,* 423 F.2d at 585, 587.

In this case, Davidson's contacts are even more scant than the defendant's contacts with the forum state in *Glater* or *Seymour.* Moorehead's affidavit articulates only two substantial contacts that Davidson had with Rhode Island. First, Moorehead states that the Mariners, coached by Davidson, played an "annual game" against Bishop Hendricken High School in

Rhode Island for the express purpose of "showcasing the team and soliciting and recruiting" baseball players. Moorehead Aff. ¶¶ 3–4. Second, Moorehead, states that "various baseball coaches" such as Bishop Hendricken High School Baseball Coach Ed Halloway distributed Mariners pamphlets and materials in Rhode Island at Davidson's request. *Id.* ¶ 5. These statements indicate only that Davidson advertised the Mariners and recruited players for the team in Rhode Island. That contact, however, is insufficient to expose Davidson, and subsequently the Estate, to Rhode Island's general jurisdiction. *See Sandstrom v. ChemLawn Corp.,* 904 F.2d 83, 89 (1st Cir.1990); *Glater,* 744 F.2d at 217; *Seymour,* 423 F.2d at 587; *Capizzano,* 826 F.Supp. at 55–56; *Russo v. Sea World of Florida, Inc.,* 709 F.Supp. 39, 41–42 (D.R.I.1989).

Although he had some contacts with Rhode Island, Davidson lacked contact with the state in several key areas. *See Glater,* 744 F.2d at 216–17; *Seymour,* 423 F.2d at 585. He neither lived nor maintained an office in Rhode Island. He owned no property in Rhode Island. Furthermore, Davidson did not have a Rhode Island mailing address or a Rhode Island phone number. Instead, Davidson received all completed applications and payments relating to the Mariners baseball team, including those from Rhode Island residents, at his office in Massachusetts. In addition, the contact information on the Mariners' brochure, a copy of which plaintiff included in the record, provides a Massachusetts phone number and a Massachusetts address for interested persons to contact for more information regarding the Mariners. Finally, it is of no import that some Mariners players lived in Rhode Island, because it is the defendant's contacts with the forum state, not its residents, that matter for purposes of in personam juris-

diction. *See Helicopteros*, 466 U.S. at 417, 104 S.Ct. 1868; *Russo*, 709 F.Supp. at 42. Although Davidson did have some contacts with Rhode Island, those contacts were not continuous and systematic, thus this Court has no general personal jurisdiction over the Estate.

It should be noted, however, that instead of taking a dismissal of the Estate, plaintiff may want to transfer venue of this case to Massachusetts. *See* 28 U.S.C. § 1406(a) (1994); *Sullivan v. Tagliabue*, 785 F.Supp. 1076, 1082–83 (D.R.I.1992). Although plaintiff has not yet broached the subject of transfer, the Estate has already launched a preemptive salvo, suggesting that the case should be dismissed rather than transferred because "plaintiff obviously chose a venue which it knew was improper, and which it knew would cause the defendant to appear, at great expense, at a distant location, for the sole purpose of challenging an improper venue." Estate of John J. Davidson/Kenneth Freed As Executor's Motion to Dismiss Second Amended Complaint for Improper Venue Under F.R.C.P. Rule 12(b)(3) at 2. That issue is not ripe for determination. If plaintiff moves to transfer and the Estate objects, the Court will decide the matter at that time.

## CONCLUSION

For the foregoing reasons, the motion to dismiss the Estate pursuant to 12(b)(2) for lack of personal jurisdiction is granted. However, plaintiff has thirty days from the date hereof to move to transfer what remains of this case (the claims against the Estate and the AAU) to the District of Massachusetts.

It is so ordered.